United States Court of Appeals,

Fifth Circuit.

No. 94-10680.

FLOORS UNLIMITED, INC., d/b/a First Floors, Plaintiff-Appellant,

v.

FIELDCREST CANNON, INC., Defendant-Appellee.

June 15, 1995.

Appeal from the United States District Court for the Northern District of Texas.

Before DAVIS, SMITH and WIENER, Circuit Judges:

WIENER, Circuit Judge:

Plaintiff-Appellant Floors Unlimited (Floors), a carpet retailer and dealer, appeals the district court's summary judgment dismissal of Floors' breach of contract and breach of fiduciary duty claims against Fieldcrest Cannon, Inc. (Fieldcrest), a carpet manufacturer. As we conclude that, as a matter of law, the oral dealership agreement between Floors and Fieldcrest did not fall within the parol evidence proscription of Section 26.01(b)(6) of the Texas statute of frauds, we reverse the district court's dismissal of Floors' breach of contract claim and remand for further proceedings consistent with this holding. We affirm the district court's dismissal of Floors' claim for breach of a fiduciary duty by Fieldcrest, however, agreeing with the court that no fiduciary relationship existed between the parties.

I

FACTS AND PROCEEDINGS

Floors is a carpet retailer and dealer which sells carpet to

1

residential and commercial customers in North Texas.  Fieldcrest is a carpet manufacturer which markets its product through dealers like Floors.  Fieldcrest's practice was to market its "Karastan" line of carpeting only through a limited number of authorized dealers.

According to Floors, it entered into an oral agreement with Fieldcrest in 1982 whereby Floors became an authorized dealer for Fieldcrest's "Karastan" line.  Floors alleged that the agreement required it to acquire carpeting, carpet samples, display racks, and promotional material from Fieldcrest.  The agreement allegedly required Floors to sell and advertise Fieldcrest's product in conformity with certain rules promulgated by Fieldcrest.  Floors claimed that Fieldcrest agreed not to terminate the contract (and, therefore, Floors' designation as an authorized "Karastan" dealer) except for "good cause," specifically, for Floors' failure to comply with Fieldcrest's strict marketing requirements.  In oral argument before this court the parties acknowledged that Floors was not required to buy any minimum quantity of carpet or to meet any continuing sales quotas or goals to retain its dealership.

In February 1993, however, Fieldcrest terminated its eleven-year relationship with Floors, unilaterally and without explanation.  That Floors never violated any of Fieldcrest's marketing requirements is undisputed.

Floors sued Fieldcrest in Texas state court, alleging breach of contract, promissory estoppel, and breach of fiduciary duty. Fieldcrest removed the case to federal court based on diversity

jurisdiction and moved for summary judgment on all claims. The district court granted Fieldcrest's summary judgment motion, finding that (1) the parties' oral agreement, as a "satisfaction contract," could not possibly be performed within one year, and thus was unenforceable under the Texas statute of frauds; (2) the promissory estoppel claim had no merit, as Floors had conceded that there was no "second promise" to reduce the parties' oral agreement to writing; and (3) no fiduciary relationship existed between Floors and Fieldcrest.

Floors timely filed an appeal to this court, asserting that (1) the oral contract was for an indefinite duration and therefore was not subject to the statute of frauds; and (2) genuine issues of material fact remained regarding the existence of a fiduciary relationship between the parties, precluding summary judgment dismissal of Floors' claim of breach of a fiduciary duty by Fieldcrest.[1]

II

ANALYSIS

A. STANDARD OF REVIEW

We review a grant of summary judgment *de novo,* applying the

---

[1]Floors did not challenge or address the district court's grant of summary judgment with regard to the promissory estoppel claim. Consequently, we need not, and therefore do not, consider that issue on appeal. *See Cinel v. Connick,* 15 F.3d 1338, 1345 (5th Cir.1994) (appellant abandons all issues not raised and argued in its initial brief on appeal), *cert. denied,* --- U.S. ----, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994).

same standard as the district court.[2]  Summary judgment is appropriate if the record, judged in the light most favorable to the non-moving party, discloses that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3]  The moving party must demonstrate by competent evidence that no issue of material fact exists.[4]  The non-moving party then has the burden of showing the existence of a specific factual issue which is disputed.[5]  If any element of the plaintiff's case lacks factual support, the district court should grant summary judgment.[6]  To the extent a district court's grant of summary judgment is based on an interpretation of state law, our review of that determination is also *de novo.*[7]

B. BREACH OF CONTRACT CLAIM

Two provisions of the Texas statute of frauds, which requires that specified types of agreements be in writing to be enforceable,

---

[2]*See Norman v. Apache Corp.,* 19 F.3d 1017, 1021 (5th Cir.1994).

[3]*See* Fed.R.Civ.P. 56(c);  *Brothers v. Klevenhagen,* 28 F.3d 452, 455 (5th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 639, 130 L.Ed.2d 545 (1994).

[4]*See Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 198-99 (5th Cir.1988), *cert. denied,* 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988).

[5]*See Celotex Corp. v. Catrett,* 477 U.S. 317, 321-22, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).

[6]*See id.*

[7]*See Commons W. Office Condos, Ltd. v. Resolution Trust Corp.,* 5 F.3d 125, 127 (5th Cir.1993) (*citing Salve Regina College v. Russell,* 499 U.S. 225, 231-32, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991)).

are implicated in this case.

1. *Contract to be Performed Within One Year*

Section 26.01(b)(6) of the Texas statute of frauds requires that, to be enforceable, any agreement which is "not to be performed within one year from the date of making the agreement" must be in writing.[8] The district court concluded that the oral contract alleged by Floors was not intended to be performed within one year of its making and, therefore, was unenforceable under the statute of frauds. We disagree.

In his deposition, the president of Floors stated that he believed the oral contract between his company and Fieldcrest would last "forever and ever and ever" and that Fieldcrest would not terminate the dealership agreement except for "good cause." In addition, Floors' president asserted his belief that his company's designation as a "Karastan" dealer "would continue ... as long as [Floors] complied with the rules and regulations that [Fieldcrest] established for its authorized dealers." We conclude from this evidence—essentially uncontradicted by Fieldcrest—that the oral agreement between Fieldcrest and Floors was of an *indefinite* duration, terminable only for "good cause." Thus, we are squarely faced with the question of law: Is an indefinite term contract, terminable only for good cause, required to be in writing under Section 26.01(b)(6) of the Texas statute of frauds?

In *Falconer v. Soltex Polymer Corp.*[9], we held that an oral

_____

[8]Tex.Bus. & Com.Code Ann. § 26.01(b)(6).

[9]886 F.2d 1312 (5th Cir.1989) (unpublished opinion).

5

contract of employment that was alleged by the employee to last "forever," "so long as he obeyed the company rules and did his job," was an employment contract for an indefinite term, and was therefore barred by the Texas statute of frauds.[10]  Our subsequent decision in *Pruitt v. Levi Strauss & Co.*[11], however, observed that our decision in *Falconer* was questionable because, under Texas law, "[i]f an oral employment agreement can cease upon some contingency, other than by some fortuitous event or the death of one of the parties, the agreement may be performed within one year, and the statute of frauds does not apply."[12]

In *Pruitt,* we reviewed applicable Texas law and recognized that Texas courts generally held that when no period of performance is stated in an oral employment contract, the statute of frauds does not apply because the contract is performable within a year.[13] The Texas courts, we observed, drew a distinction between contracts of an unstated or indefinite duration, which fell outside the statute of frauds, and contracts of a specified duration longer than a year, which fell within the statute of frauds.[14]

Despite our acknowledgement of Texas jurisprudence on the

---

[10]*See id.*

[11]932 F.2d 458 (5th Cir.1991).

[12]*See id.* at 463-64 (*citing McRae v. Lindale Indep. School Dist.,* 450 S.W.2d 118, 124 (Tex.Civ.App.-Tyler 1970, writ ref'd n.r.e.); *Fruth v. Gaston,* 187 S.W.2d 581, 584 (Tex.Civ.App.-Austin 1945, writ ref'd w.o.m.)).

[13]*See id.* at 463-65.

[14]*See id.*

6

issue, we nonetheless held that the oral employment contract in *Pruitt,* which had not specified any length of time for performance, fell within the statute of frauds and was therefore unenforceable. The reason for our manifestly conflicting decision was that under the *stare decisis* rule of this Circuit—which provides that one panel cannot overturn the decision of a prior panel in the absence of *en banc* reconsideration or a superseding Supreme Court decision—we were bound by the precedent of *Falconer.*[15]

In *Pruitt* we also acknowledged the corollary of our *stare decisis* rule, articulated in our decision in *Farnham v. Bristow Helicopters, Inc.*[16], that in diversity cases we must follow subsequent state court decisions that are *clearly contrary* to one of our prior decisions.[17] We examined one Texas state court decision subsequent to *Falconer*—namely, *Winograd v. Willis*[18], which we read as not "clearly contrary" to *Falconer*—and concluded that we were still bound by *Falconer.*[19]

---

[15]*See id.* at 465 (*citing Farnham v. Bristow Helicopters, Inc.,* 776 F.2d 535 (5th Cir.1985).

[16]776 F.2d 535, 537 (1985).

[17]*See Pruitt v. Levi Strauss & Co.,* 932 F.2d 458, 465-66 (5th Cir.1991) (*citing Farnham,* 776 F.2d at 537). *See also Exxon Co. v. Banque De Paris Et Des Pays-Bas,* 889 F.2d 674, 676 (5th Cir.1989) (federal court sitting in diversity is bound to follow decisions of state's intermediate appellate courts unless it is "convinced by other persuasive data that the highest court of the state would decide otherwise."), *cert. denied,* 496 U.S. 943, 110 S.Ct. 3230, 110 L.Ed.2d 676 (1990).

[18]789 S.W.2d 307 (Tex.Ct.App.-Houston [14th Dist.] 1990, writ denied).

[19]*See Pruitt,* 932 F.2d at 465-66.

Since we decided *Pruitt,* there have been two published decisions by Texas Courts of Appeals that have addressed the applicability of the statute of frauds to an indefinite term employment contract.[20] In determining that the oral contract in the instant case was subject to the statute of frauds, the district court concluded that those subsequent Texas court decisions were not "clearly contrary" to our holding in *Pruitt* and that the court therefore could not disregard the holdings of *Falconer* and *Pruitt.* Our close examination of those subsequent Texas cases leads us to the contrary conclusion, i.e., that they *are* "clearly contrary" to our decisions in *Falconer* and *Pruitt.* That in turn compels us to conclude that *Falconer* is not a correct statement of Texas law and thus is no longer binding precedent in this Circuit.

The first case decided subsequent to *Pruitt* was *Goodyear Tire & Rubber Co. v. Portilla.*[21] In *Goodyear,* the oral employment agreement allegedly provided that the plaintiff's employment would last "as long as I ... done my job right."[22] The *Goodyear* court held that the employer's representation to the plaintiff that she would not be discharged except for unsatisfactory performance

---

[20]The two cases are *Gerstacker v. Blum Consulting Eng'rs., Inc.,* 884 S.W.2d 845 (Tex.Ct.App.-Dallas 1994, writ denied) and *Goodyear Tire & Rubber Co. v. Portilla,* 836 S.W.2d 664 (Tex.Ct.App.-Corpus Christi 1992), *aff'd on other grounds,* 879 S.W.2d 47 (Tex.1994).

[21]836 S.W.2d 664 (Tex.Ct.App.-Corpus Christi 1992), *aff'd on other grounds,* 879 S.W.2d 47 (Tex.1994).

[22]*See id.* at 667.

formed a satisfaction contract.[23]  As the contract did not specify how long the employment term would last, the court held that it was not barred by the statute of frauds because the contract was performable within one year.[24]  The *Goodyear* court distinguished its case from others in which Texas courts had ruled that agreements promising to retain the employee until retirement had to be in writing to be enforceable under the statute of frauds, unless retirement was scheduled to occur within one year.[25]

The district court held that *Goodyear* was not "clearly contrary" to *Falconer* because the *Goodyear* court noted that "[a]t no time did [the plaintiff] contend that she presumed to have a job until she retired."[26]  From this statement, the district court concluded that *Goodyear* "cannot be said to stand for the proposition that satisfaction contracts never fall within the statute of frauds."  We think that the district court misinterpreted *Goodyear.*

The statement in *Goodyear* on which the district court relies merely indicates that the contract involved in *Goodyear* was an *indefinite* term contract.  If the contract had specified that it would last "until retirement," the contract would have been for a definite term and would fall within the statute of frauds unless normal retirement age was to occur within one year.  We read

---

[23]*See id.* at 668.

[24]*See id.* at 669.

[25]*See id.* at 669-671.

[26]*Id.* at 670.

nothing in the passage quoted by the district court as being contrary to the general rule; indeed, the *Goodyear* court's statement merely echoes our conclusion that definite term contracts fall within the Texas statute of frauds whereas indefinite term contracts do not.

The second relevant Texas case decided after *Pruitt* was *Gerstacker v. Blum Consulting Eng'rs., Inc.*[27] The court in *Gerstacker* held that the statute of frauds did not apply to an employer's oral promise to employ the plaintiff "during [his] good performance and satisfactory performance of his duties."[28] The court proceeded to determine the applicability of the statute of frauds by ascertaining the parties' intent regarding the duration of employment at the time of the confection of the contract.[29] Concluding that the parties had agreed that the intended term for performance of employment was until the occurrence of an express contingency (unsatisfactory performance), the court held that the contract could conceivably be performed within one year and that the statute of frauds therefore did not apply.[30]

Another Texas case decided subsequent to *Pruitt, Collins v.*

---

[27]884 S.W.2d 845 (Tex.Ct.App.-Dallas 1994).

[28]*See id.* at 847.

[29]*See id.* at 850-51.

[30]*See id.* at 851 (*citing Hardison v. A.H. Belo Corp.,* 247 S.W.2d 167, 168-69 (Tex.Civ.App.-Dallas 1952, no writ) (holding that statute of frauds does not apply to oral agreement providing employment as long as employee does satisfactory work because contingency may happen within one year)).

10

*Allied Pharmacy Management*[31], although not clearly contrary to *Pruitt,* is significant in reinforcing our conclusion that the instant agreement is enforceable because it falls outside the statute of frauds. The *Collins* court illustrated the converse doctrine of *Goodyear* when it held that, because the alleged oral employment agreements were for specified terms of three years, they had to be in writing to be enforceable even though there existed the possibility of termination for cause within a year.[32] The *Collins* court rejected the plaintiffs' argument that the possibility of termination for cause took their three-year oral contracts outside the statute of frauds, concluding instead that the agreements' specified durations trumped the mere possibility of termination for cause: Such a possibility simply did not constitute "performance" of these specified-term contracts under their own terms.[33]

We believe that *Goodyear* and *Gerstacker* are "clearly contrary" to our antecedent decisions in *Falconer* and *Pruitt,* and that *Collins,* although not "clearly contrary" to our decisions because it involved a definite term contract, lends support to our conclusion that *Falconer* is no longer a correct statement of Texas law. Under *Farnham,* therefore, we are precluded from following *Falconer* because subsequent Texas law is "clearly contrary" to its

---

[31]871 S.W.2d 929 (Tex.App.-Houston [14th Dist.] 1994, no writ).

[32]*See id.* at 934.

[33]*See id.* at 934.

11

holding.

As we suggested in *Pruitt,* we are now satisfied that, if faced with this issue, Texas courts would conclude that a contract for an indefinite duration, terminable only for cause, falls outside the statute of frauds. And in light of such satisfaction, we deny Floors' motion for certification of that question of law to the Supreme Court of Texas.

The oral dealership agreement between Floors and Fieldcrest in the instant case is a satisfaction contract for an *indefinite* term—"as long as [Floors] followed certain rules and regulations"—and not for a specified duration. The contract therefore falls outside the purview of Section 26.01(b)(6) of the Texas statute of frauds.

## 2. *Contract for Sale of Goods for $500 or More*

Fieldcrest also argued in its motion for summary judgment that the oral agreement alleged by Floors is unenforceable under Section 2.201(a) of the Texas Business and Commerce Code, which provides that a contract for the sale of goods at a price at or over $500 is not enforceable unless it is in writing.[34] The district court did

---

[34]The relevant portion of Section 2.201 reads as follows:

> (a) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

12

not address this argument, instead basing its summary judgment dismissal of Floors' claims on Section 26.01(b)(6) of the Texas statute of frauds.

As we find that Section 26.01(b)(6) does not apply to the parties' oral agreement, we turn to Fieldcrest's alternative argument for summary judgment dismissal grounded in Section 2.201(a) of the Texas statute of frauds. The parties have failed to cite any relevant Texas cases expressly addressing the issue whether Section 2.201(a) is applicable to dealership or dealership contracts, and we have been unable to locate any such cases independently. Given the apparent absence of Texas law on the subject, we decline the invitation to address the issue whether a dealership agreement such as the one in the instant case falls within the statute of frauds provision regarding contracts for the sale of goods priced at $500 or more. It would not be prudent for us to render decision on such an uncertain issue when the district court has not yet addressed it.[35]

Although we do not express any opinion on the applicability of Section 2.201(a) to the agreement in this case, we note that if the district court on remand decides that a dealership agreement such

---

Tex.Bus. & Com.Code Ann. § 2.201(a).

[35]For the same reason, we would be premature in certifying this issue to the Supreme Court of Texas at this time. If, however, the district court on remand rules on the applicability of § 2.201 to the dealership agreement here at issue and the case is thereafter appealed to this court, the question might well be one ripe for certification, given the split of authority throughout the country and the dearth of Texas authority on the issue.

13

as the one between Floors and Fieldcrest is subject to Section 2.201(a) of the Texas statute of frauds, it must then reexamine the issue whether, separately or in combination, Fieldcrest's letters to Floors constitute a writing sufficient to meet the requirements of the statute of frauds. The Uniform Commercial Code Comment accompanying Section 2.201 states that the "phraseology of this section is intended to make clear that ... [t]he required writing need not contain all the material terms of the contract and such material terms as are stated need not be precisely stated."[36] The comment also provides that "[a]ll that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction."[37] In light of this commentary interpreting the statutory language at issue, the district court on remand should closely examine Fieldcrest's various letters to Floors to determine whether, under Texas law, the correspondence meets the writing requirement of Section 2.201 of the Texas statute of frauds.

C. BREACH OF FIDUCIARY DUTY CLAIM

The district court determined that there was no fiduciary relationship between Floors and Fieldcrest which would support Floors' claim that Fieldcrest breached its fiduciary duty. Floors concedes that there was no legal partnership between it and Fieldcrest; it asserts, nonetheless, that the nature of its relationship with Fieldcrest created a question of fact as to the

---

[36]Tex.Bus. & Com.Code Ann. § 2.201 comment 1.

[37]*See id.*

14

existence of a fiduciary obligation which should have precluded summary judgment. Specifically, Floors contends that an issue of fact exists because:

> [Fieldcrest] took many actions, some of them in writing, to make its dealers feel that a special relationship—akin to a partnership—existed. The use of the term "partnership," while it may not create the legal entity of partnership, was intentionally used—and repeatedly—by [Fieldcrest] to impress its dealers that their relationship was more than "arms length."

We find this contention to be without merit. Under Texas law, a fiduciary duty will not be lightly created, as it imposes extraordinary duties.[38] The party owing the duty in a fiduciary relationship must put the interests of the beneficiary ahead of its own if the need arises.[39] Our review of the summary judgment evidence convinces us that the relationship between Fieldcrest and Floors did not give rise to any fiduciary duty.

In *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*[40], the Supreme Court of Texas held that, as a matter of law, the parties to the written franchise agreement in that case did not have a fiduciary relationship because there was no evidence of a "confidential relationship" between them.[41] The court noted that, although the existence of a confidential relationship is

---

[38]*See Gillum v. Republic Health Corp.,* 778 S.W.2d 558, 567 (Tex.Ct.App.-Dallas 1989, no writ).

[39]*See Lee v. Wal-Mart Stores, Inc.,* 943 F.2d 554, 558-59 (5th Cir.1991) (citing Texas Supreme Court cases finding fiduciary relationships).

[40]823 S.W.2d 591 (Tex.1992).

[41]*See id.* at 594.

15

"ordinarily a question of fact, when the issue is one of no evidence, it becomes a question of law."[42]

Floors has not presented any summary judgment evidence that its relationship with Fieldcrest was anything more than an longstanding, cordial business relationship. The mere conversational use of the term "partnership" in Fieldcrest's correspondence and dealings with Floors does not warrant imposing a fiduciary relationship between the parties. There is no indication that the relationship between Fieldcrest and Floors was one in which influence was "acquired and abused"[43] or one in which there was a "heightened degree of trust and confidence that surpasses what is customarily shared between business associates."[44]

On the contrary, the summary judgment evidence as a whole reveals that Fieldcrest, which took great care to maintain its "Karastan" product's high-quality image, and Floors, which wanted to sell as much carpeting as possible, occupied naturally antagonistic positions. Although the parties entered into an agreement to work together out of self-interest, they had different goals and were free to pursue their own interests. Moreover, we are convinced that the parties' informal dealings for eleven years, based only on an oral agreement, do not evidence a fiduciary

---

[42]*See id.*

[43]*See id. (citing Texas Bank & Trust Co. v. Moore,* 595 S.W.2d 502, 507 (Tex.1980)).

[44]*See United Teachers Assoc. Ins. Co. v. Mackeen & Bailey, Inc.,* 847 F.Supp. 521, 530 (W.D.Tex.1994) (finding fiduciary relationship between actuary and client).

16

relationship. We have previously observed that a fiduciary relationship does not exist merely because businesspersons choose to "conduct their affairs on a handshake, without formal written contracts."[45] Agreeing with the district court, we therefore hold as a matter of law that the relationship between Fieldcrest and Floors did not give rise to any fiduciary duty.

## III

## CONCLUSION

Finding that no fiduciary relationship existed between the parties, we affirm the district court's summary judgment dismissal of Floors' breach of fiduciary duty claim. We conclude, however, that the oral dealership agreement between Floors and Fieldcrest is not covered by the Texas statute of frauds, as that agreement has an indefinite term not necessarily requiring more than a year to perform. We therefore reverse the district court's grant of summary judgment as to Floors' breach of contract claim and remand this case to the district court for further proceedings consistent with this opinion. In so doing, we decline Floors' invitation to certify the Section 26.01(b)(6) statute of frauds issue to the Supreme Court of Texas.

AFFIRMED in part, REVERSED in part, and REMANDED.

---

[45]*See Lee v. Wal-Mart Stores, Inc.,* 943 F.2d 554, 558 (5th Cir.1991).

17